## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

JOSEPH R. JENKINS,

      Petitioner,

v.                                 Case No. 4:21-cv-219-AW-MJF

RICKY D. DIXON,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner Joseph R. Jenkins, proceeding with counsel, has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. Doc. 1. Respondent ("the State") answered, Doc. 14, providing relevant portions of the state court record, Doc. 15. Jenkins replied. Doc. 19. The undersigned concludes that no evidentiary hearing is required for the disposition of this matter, and that Jenkins is not entitled to habeas relief.[1]

---

[1] The District Court referred this case to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b).

# I. BACKGROUND FACTS AND PROCEDURAL HISTORY

On July 31, 2008, Jenkins pleaded *nolo contendere* to three felonies in Leon County Circuit Court Case No. 2008-CF-51: (1) Armed Robbery with a Deadly Weapon, (2) Attempted Armed Robbery with a Deadly Weapon, and (3) Fraudulent Use of a Credit Card (Twice within Six Months). *See* Doc. 15, Ex. 3 (J. & Sentence); Ex. 5 at 31-32 (Plea & Acknowledgement of Rights).[2] Consistent with Jenkins's plea agreement, he was adjudicated guilty of each offense and sentenced to a total term of 8 years of imprisonment followed by 10 years on probation, with 207 days of jail credit. Ex. 3; Ex. 5 at 31-32; *see also* Ex. 5 at 46-54 (Order of Probation).[3] The statutory maximum for the Armed Robbery was imprisonment for life. Ex. 2; Ex. 3; Ex. 5 at 31-32.

Jenkins entered the Florida Department of Corrections on August 7, 2008. Doc. 1 at 6; Doc. 14 at 3. On March 1, 2015, Jenkins was released from the incarceration portion of his sentence (based on the award of gain-time) and began

---

[2] Citations to the state-court record are to the electronically-filed exhibits provided with the State's answer. Doc. 15. The court cites the exhibit number followed by the page number according to the Bates stamp number at the bottom right corner of the page.

[3] Jenkins was sentenced to 8 years of imprisonment followed by 10 years on probation for the Armed Robbery; 8 years of imprisonment for the Attempted Armed Robbery; and 5 years of imprisonment for the Credit Card Fraud, all terms to be served concurrently. Ex. 3.

serving his term of probation for the Armed Robbery. *Id*. On January 20, 2017, Jenkins was arrested in Duval County, Florida (Jacksonville) and charged with the commission of new criminal offenses (Stalking and Exposure of Sexual Organs). Ex. 22 at 23 (Duval County Arrest and Booking Report). On that same date, Jenkins was charged with violating his probation in the Leon County case. Ex. 16 at 134-35 (Violation Report); Ex. 22 at 25-27 (Addendum to Violation Report). A VOP warrant issued on January 31, 2017. Ex. 22 at 28-29 (VOP Warrant).

Some of the Duval County charges were dismissed, and the others went to trial on August 2, 2017, and resulted in a judgment of not guilty. Ex. 22 at 30. Jenkins was returned to Leon County to face his violation-of-probation ("VOP") charges. Ex. 5 at 63-65 (Leon County Arrest/Probable Cause Aff.); Ex. 22 at 11-13, 31.

On October 24, 2017, the VOP court conducted an evidentiary hearing on the VOP charges, determined that Jenkins committed a willful and substantial violation of his probation, and revoked Jenkins's probation. Ex. 5 at 104-56 (VOP Hr'g Tr.); Ex. 5 at 63-82 (VOP Hr'g Exs.); Ex. 6 at 171 (corrected Order of Revocation of Probation nunc pro tunc 10/24/17). The VOP court resentenced Jenkins on the Armed Robbery to 20 years of imprisonment, and determined that he should be awarded 76 days of jail-time credit for "time served between the date of arrest as a violator following release from prison to the date of resentencing." Ex. 5 at 86-94.

(VOP J. & Sentence) (citing Fla. Stat. § 921.0017).[4] Jenkins appealed, but then voluntarily dismissed his direct appeal on April 12, 2018. *See* Exs. 4-8.

On May 30, 2018, Jenkins filed a *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, claiming that his VOP trial counsel was ineffective. Ex. 10 at 4-18. The state circuit court held an evidentiary hearing and denied relief on November 5, 2018. Ex. 10 at 55-121 (Evidentiary Hr'g. Tr.); Ex. 10 at 26-38 (Order). Jenkins filed a motion for rehearing, Ex. 10 at 39-41, which was denied, Ex. 11 at 125-27. Jenkins filed an addendum to his motion for rehearing, Ex.

---

[4] Section 921.0017, Florida Statutes, provides:

> Effective for offenses committed on or after January 1, 1994, if an offender's probation or community control is revoked and the offender is serving a split sentence pursuant to s. 948.012, upon recommitment to the Department of Corrections, the court shall order credit for time served in state prison or county jail only, without considering any type of gain-time earned before release to supervision, or any type of sentence reduction granted to avoid prison overcrowding, including, but not limited to, any sentence reduction resulting from administrative gain-time, provisional credits, or control release. The court shall determine the amount of jail-time credit to be awarded for time served between the date of arrest as a violator and the date of recommitment, and shall direct the Department of Corrections to compute and apply credit for all other time served previously on the prior sentence for the offense for which the offender is being recommitted. This section does not affect or limit the department's authority to forfeit gain-time under ss. 944.28(1) and 948.06(7).

Fla. Stat. § 921.0017 (2004).

10 at 45-48, which was denied on December 12, 2018, Ex. 10 at 49. Jenkins appealed to the Florida First District Court of Appeal ("First DCA"). Ex. 5 at 96. His appeal was assigned Case No. 1D18-4923. Ex. 9 (Docket Sheet).

While his Rule 3.850 appeal was pending, on March 4, 2019, Jenkins filed a *pro se* motion to correct sentence under Florida Rule of Criminal Procedure 3.800(a), claiming that he was entitled to a total of 277 days of jail-time credit. Ex. 22 at 3-7. The State responded that Jenkins was entitled to an additional 7 days of jail-time credit. *Id*. at 9-13. The state circuit court granted Jenkins an additional 7 days of jail credit. *Id*. at 14. Jenkins appealed to the First DCA. Ex. 22 at 46. His appeal was assigned Case No. 1D19-2414. Ex. 21 (Docket Sheet).

Jenkins was represented by counsel in his postconviction appeals. The First DCA consolidated Jenkins's appeals. Ex. 13. On May 14, 2020, the First DCA affirmed *per curiam* in each case, without written opinion. *Jenkins v. State*, No. 1D18-4923, 297 So. 3d 524 (Fla. 1st DCA 2020) (Table) (copy at Ex. 17); *Jenkins v. State*, No. 1D19-2414, 305 So. 3d 511 (Fla. 1st DCA 2020) (Table) (copy at Ex. 27). The mandate in Case No. 1D18-4923 issued on July 15, 2020. Ex. 20. The mandate in Case No. 1D19-2414 issued on November 30, 2020. Ex. 30.

Jenkins filed his counseled federal habeas petition on May 27, 2021. Doc. 1. Jenkins's petition raises two claims: (1) VOP trial counsel was constitutionally

ineffective during plea negotiations for failing to advise Jenkins that he was entitled to 277 days of jail-time credit; and (2) the State of Florida violated Jenkins's rights to due process and equal protection by failing to award him 277 days of jail-time credit to which he was entitled under Florida Statute § 921.161(1).[5]

The State asserts that Jenkins is not entitled to habeas relief, because (1) his sentence-credit claim raises a purely state law issue, and (2) VOP trial counsel was not ineffective during plea negotiations. Doc. 14.

## II. RELEVANT LEGAL PRINCIPLES

### A.   Claims Cognizable on Federal Habeas Review

Federal habeas relief is available to correct only constitutional injury.   28 U.S.C. § 2254(a); *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) ("The habeas statute unambiguously provides that a federal court may issue a writ of habeas corpus to a state prisoner only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." (internal quotations and

---

[5] Section 921.161(1) provides:

> A sentence of imprisonment shall not begin to run before the date it is imposed, but the court imposing a sentence shall allow a defendant credit for all of the time she or he spent in the county jail before sentence. The credit must be for a specified period of time and shall be provided for in the sentence.

Fla. Stat. § 921.161(1).

citations omitted)); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (errors that do not infringe upon a defendant's constitutional rights provide no basis for federal habeas corpus relief).

**B.     Section 2254 Standard of Review**

A federal court "shall not" grant a habeas corpus petition on any claim that was adjudicated on the merits in state court unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362 (2000).[6] Justice O'Connor described the appropriate test:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

---

[6] Unless otherwise noted, references to Supreme Court's *Williams* case are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403-13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Under the *Williams* framework, the federal court first must determine the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). After identifying the governing legal principle, the federal court determines whether the state court's adjudication is contrary to the clearly established Supreme Court case law. The adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *See Early v. Packer*, 537 U.S. 3, 8 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").

If the "contrary to" clause is not satisfied, the federal court determines whether the state court "unreasonably applied" the governing legal principle set forth in the Supreme Court's cases. The federal court defers to the state court's reasoning unless the state court's application of the legal principle was "objectively unreasonable" in light of the record before the state court. *See Williams*, 529 U.S. at 409; *Holland v. Jackson*, 542 U.S. 649, 652 (2004). "[E]ven a strong case for relief does not mean

the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Section 2254(d) also allows habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011). As with the "unreasonable application" clause, the federal court applies an objective test. *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams*, 529 U.S. at 410). AEDPA also requires federal courts to "presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and

convincing evidence.'" *Landrigan*, 550 U.S. at 473-74 (quoting 28 U.S.C. § 2254(e)(1)).

The Supreme Court has emphasized often that a state prisoner's burden under § 2254(d) is "difficult to meet, . . .  because it was meant to be." *Richter*, 562 U.S. at 102. The Court elaborated:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin*, 518 U.S. 651, 664, 116 S. Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, <u>a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement</u>.

*Richter*, 562 U.S. at 102-03 (emphasis added).

A federal court may conduct an independent review of the merits of a petitioner's claim only if it first finds that the petitioner satisfied § 2254(d). *See Panetti v. Quarterman*, 551 U.S. 930, 954 (2007). Even then, the writ will not issue

unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).

## C.    <u>Federal Law Governing Claims of Ineffective Assistance of Counsel</u>

The Supreme Court follows a two-pronged test for evaluating claims of ineffective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668 (1984). The petitioner must show (1) his counsel's performance was constitutionally deficient, and (2) the deficient performance prejudiced him. *See id.* at 687. "First, petitioner must show that 'counsel's representation fell below an objective standard of reasonableness.' Second, petitioner must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Darden v. Wainwright*, 477 U.S. 168, 184 (1986) (quoting *Strickland*, 466 U.S. at 694).

The inquiry under *Strickland*'s performance prong is "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688. Trial counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. The burden to overcome that presumption and to show that counsel's performance was deficient "rests squarely on the defendant." *Burt v. Titlow*, 571 U.S. 12, 22-23 (2013).

*Strickland*'s prejudice prong requires a defendant to establish a "reasonable probability" of a different trial outcome. *See Strickland*, 466 U.S. at 694. A reasonable probability is one that sufficiently undermines confidence in the outcome. *Id.* at 694. "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *See Strickland*, 466 U.S. at 698. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 562 U.S. at 105 (citations omitted). The Supreme Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Id.* (citations omitted).

## III.  DISCUSSION

**Ground One**  **"Petitioner was denied his Sixth and Fourteenth Amendment rights to effective assistance of counsel when his trial counsel failed to advise him of his entitlement to jail credit from the time of his warrantless arrest for violating his probation, a period of 277 days, where such information would have caused Petitioner to realize the State's plea offer of 13 years actually met what Petitioner expressly stated he was seeking with his counter offer of 12 years, and had Petitioner been so advised, he would have accepted the State['s] plea offer and not now been serving 20 years." Doc. 1 at 5.**

Jenkins alleges that prior to his VOP hearing, the State offered him a plea deal for 13 years of imprisonment. In evaluating the offer, Jenkins was focused on the actual time he would serve in prison. Jenkins reasoned that although he would receive 8 years of credit for his original 8-year sentence, the DOC likely would forfeit the gain-time it awarded on that original sentence, resulting in a net credit of only 7 years. Thus, Jenkins calculated, if he accepted the State's 13-year plea offer, he actually would "have 6 years additional years to serve." Doc. 1 at 6.

Jenkins counteroffered 12 years, reasoning that "with credit for 7 years he had already served, his new sentence would mean an additional 5 years to serve." *Id*. at 6. Jenkins states that he "stressed he would accept an additional 5 years but not 6." *Id*. The State refused Jenkins's counteroffer. *Id*. Jenkins ultimately received a 20-year sentence. *Id*. at 6.

Jenkins alleges that after he entered prison and "began working on his case," he realized that he was awarded 76 days of jail-time credit on his VOP sentence (August 10, 2017 – October 24, 2017), but was entitled to 277 days (January 20, 2017 – October 24, 2017). *Id*. at 6. According to Jenkins:

> He also realized that had he known of the 277 days of jail credit, then when the State offered him the plea offer for 13 years, he would have accepted the offer since when the almost a year of jail time credit is added to the 7 years he previously served, this would satisfy the reasoning for his counter offer of 12 years, that he would serve only an additional 5 years in DOC.

*Id*. at 6. Jenkins claims that his VOP trial counsel was ineffective "for not advising him that the jail time he was entitled to would make the State's plea offer meet the demands of his counter offer." *Id*. at 6, Mem. at 2-3.

Jenkins asserts that he exhausted this ineffective-assistance claim in his Rule 3.850 proceeding and appeal. Doc. 1 at 7. The State argues that Jenkins is not entitled to habeas relief because the sentence-credit issue is a purely state-law issue that the state courts resolved against Jenkins, and VOP trial counsel was not ineffective. Doc. 14 at 12, 18-23.

## A.    *Jenkins's Rule 3.850 Proceeding*

When Jenkins raised this ineffective-assistance claim in state court, he included three components: (1) counsel failed to persuade the State to view its plea offer the same way as Jenkins, that is, by factoring in a gain-time forfeiture and

looking at the actual time Jenkins would serve in prison; (2) counsel failed to advise Jenkins during negotiations that he was entitled to 277 days of jail-time credit; and (3) counsel failed to advise Jenkins of how much gain-time he would earn on his VOP sentence if he took the 13-year plea offer. *See* Ex. 10 at 63 (Jenkins's summary in state court).

The state circuit court conducted an evidentiary hearing. Ex. 10 at 55-121. Jenkins and his VOP trial counsel (Allen Beard) testified. The state court determined that Beard's testimony was more credible than Jenkins's testimony. *Id*. at 111. Concerning plea negotiations, Beard testified that although he sometimes discusses the effect of gain-time with his client, gain-time is not discussed with the State:

> Q [The State]  . . . Is gain time something that is typically discussed in plea negotiations?
>
> A [Mr. Beard]  Not between – you know, defense attorneys and the State. For example, his prison sentence was eight years. I know the initial offer was 15 years, meaning his remainder would be eight minus 15. Gain time isn't discussed in that context. It's based on what the original sentence was. Because Mr. Jenkins would have known how much time he actually served.
>
> I do discuss gain time with clients sometimes, in figuring out a best guess for how much additional time they'll have to serve but it doesn't ever come up in the actual plea negotiations.

Ex. 10 at 77. Concerning jail credit, Beard testified on cross-examination by Jenkins:

> A  . . . [I]n general, with every client I try to give them as much information as I can so they can make an informed decision about an

offer. But like I said, you know how much time you spent in DOC, you know how much time you spent in the Duval County Jail. And I feel like, in our discussion that our talk about gain time and how you could forfeit it on returning for a VOP, and the amount of jail time that you had accumulated since last arrest was accurate enough that you could make an informed decision. We're not talking about a disparity of years here.

Ex. 10 at 91. On re-direct, Beard testified:

Q  [The State]  Mr. Beard, who calculates the DOC credit?

A  The Department of Corrections does.

Q  And is that something that is stated in the plea colloquy or not?

A  Generally, when I fill out a plea form, I put down that defendant asks the Court to direct the DOC to calculate prior prison and county jail credit. There's also a box to be checked on the judgment and sentence that would order that.

Q  And is the person that actually served the time in the best position, other than the DOC, to know the credit served?

A  Absolutely.

Id. at 93.

The state circuit court denied relief on Jenkins's ineffective-assistance claim

as follows:

Mr. Jenkins is relying a lot on forfeiture of gain time. Gain time and credit for time served are two separate things. Often those were conflated during the course of the [postconviction] hearing and the terms used interchangeably. They are not fungible. One is distinct from the other.

Page 16 of 32

The Department of Corrections awards gain time and the Department of Corrections takes away gain time. There's no way that any defense attorney or prosecutor knows whether gain time is going to be given or taken away.

There was a lot of discussion about the amount of years that made up the plea offer. The five years that Mr. Jenkins is talking about is completely consistent with the 13 year offer that Mr. Beard says the State made. He got sentenced to – Mr. Jenkins got sentenced to eight years originally, five more years is the 13 years that the State offered.

Mr. Jenkins wanted to have everybody take into account the gain time. There's no way that – I mean, DOC may have forfeited your gain time or they may not have forfeited your gain time. There's no way that the State or the assistant public defender could have calculated that, because –

. . . .

. . . There's no way that the assistant public defender or the prosecutor would have weighed in on gain time, because they would have no way to predict whether DOC was going to forfeit your gain time or not.

When it comes to credit for time served, Mr. Jenkins seems to think he's entitled to the nine months he was held in the Duval County Jail. He is not entitled to the nine months he was held in the Duval County Jail. He was given credit for 76 days since his last arrest.

I don't know when he was arrested in Jacksonville. But it looks like he had his first appearance here on August the 10th of 2017. And the violation hearing occurred on October 24, 2017. So if you calculate that time between August and October, it comes up to 76 days, which is exactly the amount of time that he was given credit for.

Just because you have a violation doesn't mean that you were arrested on the violation. What it means is there might have been a detainer. And when you were acquitted in Jacksonville, then the

Page 17 of 32

detainer was acted upon and you were brought over here for the violation hearing.

It looks like the file is entirely consistent with you receiving the exact amount of credit that you were entitled to. In any event, it's your burden to show me that you weren't and you have not done that.

Ex. 10 at 112-14. After discussing Jenkins's other ineffective-assistance claims, the state circuit court concluded:

So I do find that the performance of Mr. Beard in representing Mr. Jenkins was not deficient pursuant to Strickland v. Washington. And even if another Court reviews this proceeding and finds that they were, I find that there was no prejudice that inured to Mr. Jenkins as a result of any deficient defense.

*Id*. at 118.

Jenkins filed a motion for rehearing in which he argued that the court overlooked the fact that he was entitled to jail credit from the date the VOP warrant issued. Ex. 10 at 39-41. The state court denied the motion for rehearing, stating in relevant part:

The Defendant, once again, complains that his jail credit has been improperly calculated. He is mistaken. The Defendant believes he is entitled to credit for time he was incarcerated in Duval County and a detainer from the violation of probation (VOP) warrant was placed on him. He was *not arrested* on the VOP warrant.

The Defendant was being supervised on his Leon County probation in Duval County. While in Duval County he was arrested on *Duval County* charges. He remained in custody in Duval County until those cases were resolved. After those cases were resolved, the VOP

detainer from Leon County resulted in him being arrested and then transported to Leon County.

Admittedly, and according to the hearing testimony of Mr. Beard (the Defendant's public defender), two of the Duval County cases were *nolle prosequi* (dropped), and he was found not guilty by a jury on the remaining case. Apparently for this reason the Defendant is absolutely convinced that he is entitled to credit for the time he spent in Duval County on his Duval County charges. He made this argument to the Court at the hearing, and he makes it again here. Obviously he believes very strongly that his position is correct. Unfortunately, a strong *belief* in correctness does not result in *actual* correctness. Such is the case here. The Defendant's belief is not the law. He is not entitled to credit for time served in Duval County.

Ex. 11 at 125-26.

Jenkins then filed an "addendum" to his motion for rehearing. Ex. 10 at 45-48 In that filing, Jenkins argued that he in fact was arrested on the VOP on January 20, 2017, pursuant to *a warrantless arrest* by his probation officer. Jenkins attached a copy of the violation report wherein his probation officer (Wm. Christopher Shelton) referenced having conducted a warrantless arrest of Jenkins on the VOP on January 20, 2017. *Id*. at 48. The state circuit court denied the motion without comment. *Id*. at 49.

On appeal, Jenkins's counseled brief focused only on the jail-credit issue (as it related to counsel's plea advice). Ex. 14. Jenkins argued that the lower court erred by ignoring the violation report indicating that his initial arrest on the VOP was on January 20, 2017, pursuant to a warrantless arrest by his probation officer. Jenkins

maintained that the law in Florida is that a warrantless arrest on a VOP triggers the accrual of jail-time credit for a violation of probation. Ex. 14 at 12-13 (citing *Cox v. State*, 218 So. 3d 453 (Fla. 1st DCA 2017); *Williams v. State*, 4 So. 3d 728 (Fla. 5th DCA 2009); *Perez v. State*, 8 So. 3d 1152 (Fla. 5th DCA 2009)). Jenkins asserted that had Beard properly advised him that he was entitled to 277 days of jail credit, Jenkins would have realized that under the State's 13-year offer he would spend only 5 years in actual custody, and he would have accepted the offer. Ex. 14.

The State's response in the postconviction appeal was that Jenkins was not arrested on the VOP charges on January 20, 2017, but rather on August 3, 2017, which was the date the VOP warrant was served/executed. Ex. 15. The State maintained that because Jenkins's ineffective-assistance claim was based on the faulty premise that he was entitled to an additional nine months of jail credit, his claim failed.

The First DCA summarily affirmed without explanation, and summarily denied Jenkins's motion for rehearing. Exs. 17, 19.

## B. *Jenkins Is Not Entitled to Habeas Relief*

The First DCA's summary affirmance is an "adjudication on the merits" of Jenkins's ineffective-assistance claim, and is reviewed under § 2254(d)'s deferential standard. *See Richter*, 562 U.S. at 99 ("When a federal claim has been presented to

a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary); *id*. at 100 ("This Court now holds and reconfirms that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'").

Where, as here, there has been one reasoned state judgment rejecting a federal claim followed by a later unexplained order upholding that judgment, federal courts employ the following "look through" presumption: "[T]he federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 584 U.S. ___, 138 S. Ct. 1188, 1192 (2018). Consistent with *Wilson*, this court presumes that the First DCA rejected Jenkins's claim for the reasons provided by the state circuit court.

The state court's decision is not "contrary to" clearly established Federal law, because the state court identified and applied the two-part *Strickland* standard, including the prejudice standard later developed in *Lafler v. Cooper*, 566 U.S. 156 (2012), and *Missouri v. Frye*, 566 U.S. 134 (2012). In *Lafler*, the Court explained that in order to establish prejudice under *Strickland* when counsel's ineffective advice led to rejection of a plea offer, the petitioner must show that:

Page 21 of 32

> but for the ineffective advice of counsel there is a reasonable probability
> that the plea offer would have been presented to the court (*i.e.,* that the
> defendant would have accepted the plea and the prosecution would not
> have withdrawn it in light of intervening circumstances), that the court
> would have accepted its terms, and that the conviction or sentence, or
> both, under the offer's terms would have been less severe than under
> the judgment and sentence that in fact were imposed.

*Lafler*, 566 U.S. at 164; *see also Frye*, 566 U.S. at 147.

Jenkins argues that the state court's rejection of his ineffective-assistance claim was unreasonable, because the state court failed to abide by Florida statutes and caselaw governing jail-time credit. Doc. 1; Doc. 19. Jenkins's argument fails for three reasons.

### 1.    <u>Jenkins's Ineffective-Assistance Claim Turns on a Question of State Law, and this Court Must Defer to the State Courts' Resolution of that State-Law Issue</u>

Jenkins's claim that Beard was ineffective for failing to advise him that he was entitled to 277 days of jail-time credit turns on a question of state law, namely, the calculation of sentence credit. Jenkins argues:

> The legal argument Petitioner presents, and which Respondent needs to
> address, is that the State of Florida denied Petitioner the full jail credit
> he was entitled to according to the laws the State of Florida created, and
> had his counsel been sufficiently effective as to these Florida laws, and
> so advised Petitioner when he was considering the State's plea deal, he
> would have realized the plea deal the State was offering met the
> conditions he had professed being willing to accept and he would have
> accepted the offer and ended up with a much lesser sentence than he
> has now through his counsels [sic] misadvice. Failure of an attorney to
> provide his client with information he needs in order to be able to

> knowingly and voluntarily make a decision as to a plea offer from the
> State is ineffective assistance of counsel.

Doc. 19 at 4-5; *see also* Doc. 1, Mem. at 9-12. Jenkins argues, by citing Florida statutes and Florida caselaw, that he was entitled to 277 days of jail-time credit, and that the state postconviction court misinterpreted Florida law in finding that he was entitled to only 76 days. Doc, 1, Mem.; Doc. 19.

As in *Callahan v. Campbell*, 427 F.3d 897 (11th Cir. 20015), Jenkins's "argument that the state court unreasonably applied *Strickland* obviously depends upon our determining [VOP trial counsel's] performance was deficient, but first we would have to conclude the state court misinterpreted state law, i.e."—the amount of jail-time credit Jenkins was entitled. *See Callahan*, 427 F.3d at 932. "'It is a fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.'" *Callahan*, 427 F.3d at 932 (quoting *Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1354-55 (11th Cir. 2005)); *see also Pinkney v. Sec'y*, DOC, 876 F.3d 1290, 1295 (11th Cir. 2017) ("[A]lthough 'the issue of ineffective assistance—even when based on the failure of counsel to raise a state law claim—is one of constitutional dimension,' we 'must defer to the state's construction of its own law' when the validity of the claim that [trial] counsel failed to raise turns on state law.").

Here, as in *Callahan*, *Herring* and *Pinkney*, the state postconviction courts already have answered the question of whether Jenkins was entitled to the 277 days of jail credit underlying his ineffective-assistance claim. The state courts determined that he was *not* entitled to that much credit. This court must defer to that determination of state law. Applying that deference, a fairminded jurist could agree with the state court's conclusion that Beard was not ineffective for failing to advise Jenkins that he would receive 277 days of jail credit.

### 2.    The State Court Reasonably Determined that Beard's Performance Was Not Deficient

An additional reason Jenkins's claim fails is because the state court reasonably determined that Beard's failure to provide Jenkins with a more specific calculation of sentence credit (and time Jenkins actually would serve) was well within the range of reasonable professional assistance. "[U]nder certain circumstances, an attorney provides ineffective assistance of counsel when he erroneously advises his client that accepting a plea agreement will result in a more favorable outcome than the agreement can possibly guarantee." *Bigio v. Fla. Dep't of Corr.*, 694 F. App'x 672, 677 (11th Cir. 2017) (counsel's failure to inform defendant of possible gain-time he could receive if he accepted the State's plea offer was not deficient performance because counsel's "desire to avoid potentially misleading his clients . . . was reasonable."); *Finch v. Vaughn*, 67 F.3d 909, 916 (11th Cir. 1995) (counsel was

Page 24 of 32

constitutionally ineffective where he erroneously advised his client that accepting a plea agreement on state charges ensured that his sentence would run concurrent to any federal sentence he might receive for the same conduct).

A fairminded jurist could agree with the state court's conclusion that Beard's reasoned decision—to provide only rough estimates of sentence credit and gain-time forfeiture—was within the wide range of competence demanded of lawyers in criminal cases.

### 3.    The State Court Reasonably Determined that Jenkins Failed to Establish Prejudice

The third reason Jenkins's ineffective-assistance claim fails is because the state court reasonably concluded that even if Jenkins was correct that Beard erred in failing to advise him that he was entitled to 277 days of jail credit, Jenkins failed to establish prejudice under *Strickland*. It is not enough for Jenkins to say that he would have accepted a 13-year plea deal with 277 days of jail credit. He also must show that it is substantially likely that (1) the State would have agreed with that calculation of jail credit and made it part of the negotiated sentence, or (2) if not part of the negotiated sentence, that the VOP court would have awarded Jenkins 277 days of jail credit. *Lafler*, 566 U.S. at 164; *Frye*, 566 U.S. at 147. Given the VOP court's actual award of credit at sentencing, and given that the State and the state postconviction courts all have disagreed with Jenkins's calculation of jail credit

Page 25 of 32

throughout his postconviction proceedings and appeals, Jenkins's cannot convincingly show that he was prejudiced by Beard's failure to advise him that he would receive 277 days of jail credit.

For all of the reasons discussed above, Jenkins has not shown that the state postconviction court erred at all, "much less erred so transparently that no fairminded jurist could agree with that court's decision." *Bobby v. Dixon*, 565 U.S. 23, 24 (2011). Jenkins is not entitled to habeas relief on his ineffective-assistance claim. *See Davis v. Ayala*, 576 U.S. 257, 269-70 (2015) (confirming that "a state-court decision is not unreasonable if fairminded jurists could disagree on its correctness;" and that a habeas petitioner "must show that the state court's decision to reject his claim was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." (internal quotation marks and citations omitted)).

**Ground Two**    **"The State of Florida violated Petitioner's Fifth and Fourteenth Amendment rights to due process and equal treatment under the law by failing to award him the 277 days of jail time he was entitled to according to Florida Statute 921.161(1)." Doc. 1 at 8.**

Jenkins claims that the State of Florida violated his rights to due process and equal protection when it failed to award him 277 days of jail-time credit to which he was entitled under Fla. Stat. § 921.161(1). *See* Doc. 1 at 9 & Attach. Jenkins raised

Page 26 of 32

his sentence-credit claim in his Rule 3.800 motion to correct sentence. Ex. 22 at 3-7. The State responded that Jenkins was entitled to only an additional 7 days of jail credit, from the date the VOP warrant was served/executed. Ex. 22 at 9-13. The state circuit court agreed with the State, and awarded Jenkins only 7 additional days of jail credit. *Id*. at 14.

On appeal, Jenkins cited exclusively to Florida statutes and caselaw to argue that the state circuit court erred in not awarding him jail credit dating back to January 20, 2017. Ex. 26. Jenkins made no mention of the Constitution, due process or equal protection; he identified no federal standard—or even any state standard—governing due process and equal protection claims; and he cited no federal case. Ex. 26.

The State asserts that although Jenkins now uses the phrases due process and equal protection, the issue of jail credit is a purely state-law question that provides no basis for federal habeas relief. Doc. 14 at 24. The State is correct.

The plain language of 28 U.S.C. § 2254(a), makes it "clear . . . that a habeas petition grounded on issues of state law provides no basis for habeas relief." *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle*, 502 U.S. at 67-68; *see also Tejada v. Dugger*, 941 F.2d 1551, 1560 (11th Cir. 1991) ("Questions of state law [and procedure] rarely raise issues of federal

constitutional significance, because '[a] state's interpretation of its own laws provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved.'" (quoting *Carrizales v. Wainwright*, 699 F.2d 1053 (11th Cir. 1983))).

The only context in which the Eleventh Circuit has found that a state prisoner's sentencing claim is cognizable on federal habeas review is when the prisoner claims that his sentence exceeds the statutory maximum. *See Echols v. Thomas*, 33 F.3d 1277, 1279 (11th Cir. 1994) (holding that such a claim "properly falls within the scope of federal habeas corpus review because 'the eighth amendment bars a prison sentence beyond the legislatively created maximum.'" (quoting *Ralph v. Blackburn*, 590 F.2d 1335, 1337 n.3 (5th Cir. 1979))). Absent an allegation that the sentence exceeds the statutory maximum, "federal courts can not [sic] review a state's alleged failure to adhere to its own sentencing procedures." *Branan*, 861 F.2d at 1508. "This limitation on federal habeas review is of equal force when a petition, which actually involves state law issues, is couched in terms of equal protection and due process." *Branan*, 861 F.2d at 1508.

In *Branan*, for example, a state prisoner claimed that he was denied due process and equal protection when the trial judge relied on invalid reasons in departing from the Florida sentencing guidelines and increasing his sentence from

the recommended 12-13 months to 15 years. *Branan*, 861 F.2d at 1507-08. The Eleventh Circuit held that the claim raised a purely state-law issue and, therefore, was not cognizable on federal habeas review. *Id*. at 1508 (citing cases).

The same is true here. Jenkins was sentenced within the statutory guidelines. He argues that the state court misinterpreted Florida law regarding the award of jail-time credit. He cites numerous Florida cases and argues that, if the VOP trial court and state postconviction courts had interpreted Florida case law and Florida statutes correctly, he would have been given more jail credit. As a result of these alleged violations of state law, Jenkins argues, he is being denied due process and equal protection as guaranteed by the Constitution.

As in *Branan*, this claim raises only a question of state law and, therefore, is not cognizable on federal habeas review. That Jenkins "casts his quarrel with Florida's interpretation and application of Florida law in constitutional due process terms fails to transform a claimed violation of state statutes into a constitutional deprivation." *Pollock v. Sec'y, Fla. Dep't of Corr.*, 349 F. App'x 383 (11th Cir. 2009) (Florida prisoner's claim that state forum interpreted and applied improperly Florida's gain-time statutes was not cognizable on federal habeas review); *see also, e.g., Peterson v. Dixon*, No. 4:20cv395-MW-MJF, 2022 WL 2333482 (N.D. Fla. May 17, 2022) (Florida prisoner's due process and equal protection claims arising

from state court's failure to award credit on VOP sentence for time spent in prison on the incarceration portion of his original sentence was not cognizable on federal habeas review), *Report and Recommendation adopted*, 2022 WL 2316649 (N.D. Fla. June 28, 2022).

Jenkins's Ground Two provides no basis for federal habeas relief.[7]

## IV. A CERTIFICATE OF APPEALABILITY IS NOT WARRANTED

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice

---

[7] Jenkins's counseled reply brief argues that the State's failure to "abide by the laws it creates" gives rise to a federal due process claim. Doc. 19 at 3 & n.2 (citing *Vitek v. Jones*, 445 U.S. 480 488 (1980), and *Meachum v. Fano*, 427 U.S. 215, 223-27 (1976)). However, this is not a case where jail credit was awarded and then taken away. Moreover, Jenkins does not identify what additional process he was due, as he clearly availed himself of Florida's postconviction process for seeking review of the jail-credit issue. *See Brown v. Tex. A & M Univ.*, 804 F.2d 327, 333-34 (5th Cir. 1986) (dismissing plaintiff's due process claim for failure to allege "with particularity what processes he was due"); *see also Pollock*, 349 F. App'x at 385 ("No argument is made that Appellant was granted basic gain-time that the state later took away, that the procedures employed by the state failed to pass constitutional muster, or that acts of the state implicated the Ex Post Facto Clause. Appellant's due process claim is without merit.").

of appeal must still be filed, even if the court issues a certificate of appealability. *See* 28 U.S.C. § 2254 Rule 11(b).

"[Section] 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El*, 537 U.S. at 336 (quoting 28 U.S.C. § 2253(c)). "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 580 U.S. —, 137 S. Ct. 759, 774 (2017) (quoting *Miller-El*, 537 U.S. at 327). Here, Petitioner has not made the requisite demonstration. Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." 28 U.S.C. § 2254 Rule 11(a).  If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

## V. CONCLUSION

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that:

1.  The petition for writ of habeas corpus, Doc. 1, challenging the judgment of conviction and sentence in *State of Florida v. Joseph Jenkins*, Leon County Circuit Court Case Nos. 2008-CF-51, be **DENIED**.

2.  The District Court **DENY** a certificate of appealability.

3.  The clerk of court close this case file.

At Panama City, Florida, this 23rd day of September, 2022.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the report and recommendation. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**